UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TETON GLOBAL INVESTMENTS LLC, a Wyoming series limited liability company,<br><br>                                    Plaintiff,<br><br>v.<br><br>LC INVESTMENT 2010, LLC, a Delaware limited liability company; LC BROKERAGE CORP., a Delaware corporation; and OMNI HOTELS MANAGEMENT CORPORATION, a Delaware corporation,<br>                                    Defendants. | Case No.: 3:20-cv-01756-AJB-MSB<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANTS' PARTIAL MOTION TO STRIKE PLAINTIFF'S THIRD AMENDED COMPLAINT; AND**<br><br>**(2) GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS WITHOUT LEAVE TO AMEND**<br><br>**(Doc. No. 44)** |

Presently pending before the Court is a partial motion to strike and partial motion to dismiss Plaintiff Teton Global Investments LLC's ("Plaintiff") Third Amended Complaint ("TAC"), filed by Defendants LC Investment 2010, LLC ("LC Investment"), LC Brokerage Corp. ("LC Brokerage"), and Omni Hotels Management Corporations ("Omni") (collectively, "Defendants"). (Doc. No. 44.) The motion is fully briefed, (Doc. Nos. 49 & 54), and the matter is suitable for determination on the papers.

///

1

For the reasons stated herein, the Court **DENIES** the motion to strike portions of Plaintiff's TAC and **GRANTS** the motion to dismiss Plaintiff's fourth cause of action.

## I.  BACKGROUND

Plaintiff owns two villas, Units #6550 and #6509, located in the Omni La Costa Resort and Spa ("Resort"). (TAC, Doc. No. 41, ¶ 11.) Defendants own and operate the Resort according to the Unit Maintenance and Operations Agreement ("UMA"). (*Id.* at 2–4.) All villas are governed by the UMA, which entitles Defendants to $100 per night or 20% of a villa owner's nightly rental revenue if the owner opts not to use LC Brokerage as its managing agent under a separate Rental Management Agreement ("RMA"). In exchange, the Resort is required to perform the following services: "(i) making and accepting reservations, (ii) enforcing standard check-in and check-out procedures . . . [and] (iii) issu[ing] room keys . . . (collectively, the "Services")." (*Id.* at 3–4.) The Resort operates as a "Condotel"—essentially a condominium unit and hotel hybrid. (*Id.* ¶ 4.) A condotel sells individual units, or villas, which can then be rented to third parties, while the unsold units operate as a traditional hotel. (*Id.*) Thus, Plaintiff and Defendants may be considered competitors, as the hotel and rental management compete with private owners, like Plaintiff, to rent units at the Resort. It is undisputed that Plaintiff is not a party to the RMA. (*Id.* ¶ 63.) The crux of the matter revolves around whether Defendants gave preferential treatment to some private owners over others in terms of access to Resort amenities and fee charging for cleaning.

Defendants were sued in a prior action in the San Diego Superior Court involving similar issues by a predecessor-in-interest of Plaintiff. *See LC Inv. 2010, LLC, et al. v. LaCosta Invs., LLC, et al.*, Case No. 37-2016-00003113-CU-BC-NC (the "Prior Action"). The Prior Action resulted in a final judgment which recognized that Defendants gave preferential treatment to some private owners in terms of access to Resort amenities and fee charging. (TAC ¶¶ 1–5.) This preferential treatment negatively impacted the value of disparately treated units—specifically, Unit #6509. (*Id.* ¶ 12.) In this action, Plaintiff, as the predecessor-in-interest, seeks to enforce this holding as to all units that it owns and for

each guest, regardless of which unit they are renting. (*Id.* ¶ 6.) Plaintiff filed the Complaint on July 15, 2020, in the Superior Court of California, County of San Diego, as Case No. 37-2020-00024566-CU-BC-CTL. (Doc No. 1-2.) On July 30, 2020, Plaintiff filed a first amended complaint as a matter of course. (Doc. No. 1 at 2.) On September 8, 2020, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1332(d), 1441(a), and 1446. (*Id.*) Thereafter, Plaintiff filed a second amended complaint on December 16, 2020, which was dismissed with leave to amend on August 11, 2021. (Doc. Nos. 16 & 39.) Plaintiff then filed the TAC on August 27, 2021. (Doc. No. 41.) Plaintiff claims Defendants continue to unfairly interfere with Plaintiff's ability to maximize their unit value and treat owners differently depending on the owner's relationship with Resort management.

## II.     LEGAL STANDARD

### A.     Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: "(1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for the court to assume "the [plaintiff] can prove [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the contents of the complaint,

accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

### B. Federal Rule of Civil Procedure 12(f)

Under Federal Rule of Civil Procedure 12(f), the court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). Rule 12(f) motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delay tactic. *See Cal. Dep't of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002). Motions to strike are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation. *In re Wal–Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007). Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike. *Id.*

Federal Rule of Civil Procedure 15(a) provides:

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
>
>> (A) 21 days after serving it, or
>>
>> (B) If the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under 12(b), (e), or (f), whichever is earlier.
>
> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

According to the Ninth Circuit, "[f]ive factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party,

4

futility of the amendment, and whether the plaintiff has previously amended the complaint." *Desertrain v. City of L.A.*, 754 F.3d 1147, 1154 (9th Cir. 2014) (quoting *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)). These factors, however, are not weighted equally. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). "Absent prejudice, or a strong showing" of the remaining factors, there exists a "presumption under Rule 15(a) in favor of granting leave to amend." *Id.* (emphasis in original).

### III. DISCUSSION

Defendants move to partially strike Plaintiff's TAC because Plaintiff amended several portions of its claims that were allegedly not subject to the prior Partial Motion to Dismiss. (*See* Doc. No. 39; Doc. No. 44-2 ("Ex. A").) Additionally, Defendants move to dismiss Plaintiff's fourth cause of action under Bus. & Prof. Code §§ 17200 et seq. The Court will address the merits of each of Defendants' requests in turn.

#### A. Defendants' Motion to Strike

Plaintiff alleged in its second amended complaint the following causes of action: (1) Declaratory Relief, (2) Breach of Contract, (3) Intentional Interference with Prospective Economic Advantage, and (4) Unfair Competition under Bus. & Prof. Code §§ 17200 et seq. ("UCL"). The Court previously granted Defendants' partial motion to dismiss Plaintiff's UCL claim, following which Plaintiff was granted leave to amend the UCL claim under the unfair prong. (Doc. No. 39 at 6) ("Plaintiff's UCL claim under the unfair prong is **DISMISSED WITH LEAVE TO AMEND**") (emphasis in original). In Plaintiff's TAC, Plaintiff also amends its breach of contract claim to include, *inter alia*, allegations that Defendants have broad control over the villas under the UMA and have failed to provide a procedure for access to third-party service providers for housekeeping or maintenance. (TAC ¶¶ 37 & 45.)

The Court finds Plaintiff's TAC, in its entirety, can be construed to have been properly filed as a matter of course. In the Court's previous order granting Defendants' motion to dismiss, the Court gave Plaintiff until August 31, 2021, to amend its complaint.

(Doc. No. 39.) Plaintiff thereafter filed its TAC on August 27, 2021, within the time given by this Court. (*See* Doc. No. 41.) Because the Court "should freely give leave when justice so requires[,]" and because Defendants have not alleged that Plaintiff acted in bad faith or that the amendments would cause undue delay or prejudice, the Court finds Plaintiff's amendments proper. Therefore, the Court **DENIES** Defendants' motion to strike.

### B. Plaintiff's Fourth Claim for Unfair Competition

The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]" and any "unfair, deceptive, untrue or misleading advertising." Bus. & Prof. Code § 17200. "Each of these three prongs constitutes a separate and independent cause of action." *Vasic v. PatentHealth, L.L.C.*, 171 F. Supp. 3d 1034, 1042 (S.D. Cal. 2016) (citation omitted). Generally, to state a claim under the unfair prong of the UCL, a plaintiff must plead conduct that either: (1) "offends an established public policy," or (2) "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and the utility of that conduct is outweighed by the harm to the consumer. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012). The Ninth Circuit has noted that the holding in *Cal-Tech Communications, Incorporated v. Los Angeles Cellular Telephone*, 20 Cal. 4th 163 (1999), directly applies to actions by competitors alleging anti-competitive practices. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169–70 (9th Cir. 2012). *Cel-Tech* held that in these cases, unfair conduct is conduct which "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187. *Cel-Tech* also required that "any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id.* at 186–87.

In its fourth claim for unfair competition under the UCL, Plaintiff states it is a direct competitor of Defendants, and that "Defendants' unfair methods of competition . . . violate established public policies." (TAC ¶ 69.) Accordingly, under *Cel-Tech*'s tethering test, Plaintiff must show that Defendants' conduct "threatens an incipient violation of an

antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187.

Here, Plaintiff has not adequately pled that Defendants' alleged disparate treatment of Plaintiff threatens an incipient violation of any antitrust law or the spirit or policies of those laws. Moreover, Plaintiff has not shown that Defendants' conduct "significantly threatens or harms competition." Plaintiff asserts Defendants engaged in an unfair business practice by consciously treating Plaintiff differently than other owners of the villas or condotel units that the Resort sold to private owners. (TAC ¶ 58.) Defendants, in reply, argue that Plaintiff fails to identify any specific public policy concerns and does not attempt to assert or address any antitrust considerations. The Court agrees. Although Plaintiff has alleged that Defendants gained an "unfair" advantage by treating Plaintiff differently than every other owner of the villas or condotel units, Plaintiff does not point to any antitrust law or policy to support the unfair practices claim. *See Davis*, 691 F.3d at 1170 (affirming dismissal of "unfair" prong UCL claim under tethering test where "[the plaintiff] advances no factual allegations to support the claim that the omission . . . in [the defendant]'s advertisements threatens to violate the letter, policy, or spirit of the antitrust laws, or that it harms competition"). Rather, Plaintiff merely states that Defendants' "business act is immoral, unethical, oppressive, substantially injurious, and has no countervailing benefit or reason for its purpose" and "violate[s] established public policies" without citing any specific law or policy. (TAC ¶¶ 68, 69.)

Additionally, as previously noted, the UMA and the judgment in the Prior Act contradict Plaintiff's allegations that the business acts were unfair. (*See* Doc. No. 39.) The UMA does not contain any express terms dealing with amenity access or cleaning services. (Doc. No. 29 at 4.) The disparate fee charging alone, and the denial of amenity access alone, is insufficient to show a violation of public policy or antitrust law. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the

7

complaint."). Plaintiff's allegations merely indicate Defendants' conduct resulted in harm to its commercial interests rather than harm to competition. The TAC does not contain any facts to show Defendants engaged in any unfair conduct, such as "horizontal price fixing, exclusive dealing, or monopolization." *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1141, 1156 (S.D. Cal. 2014). Thus, Plaintiff's UCL claim under the unfairness prong is dismissed without leave to amend. Plaintiff has been given a prior opportunity to cure the defects in this claim and has failed.

### IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motion to dismiss the fourth claim of Plaintiff's TAC and **DENIES** Defendants' motion to strike. (Doc. No. 44.)

**IT IS SO ORDERED.**

Dated: October 19, 2021

Hon. Anthony J. Battaglia
United States District Judge