1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| TETON GLOBAL INVESTMENTS LLC, a Wyoming series limited liability company,<br><br>                                    Plaintiff,<br><br>v.<br><br>LC INVESTMENT 2010, LLC, a Delaware limited liability company; LC BROKERAGE CORP., a Delaware corporation; and OMNI HOTELS MANAGEMENT CORPORATION, a Delaware corporation,<br><br>                                    Defendants. | Case No.:  20-cv-01756-AJB-MSB<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT; and**<br><br>**(2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Doc. Nos. 46 & 47)** |

11
12
13
14
15
16
17
18
19
20

Presently pending before the Court is (1) Plaintiff Teton Global Investment LLC's ("Plaintiff") Motion for Partial Summary Judgment (Doc. No. 46), and (2) LC Brokerage Corp. ("LC Brokerage"), LC Investment 2010 ("LC Investment"), and Omni Hotel Management Corporation's ("Omni") (collectively, "Defendants") Motion for Summary Judgment (Doc. No. 47). The motions have been fully briefed. For the reasons provided in detail below, the Court **DENIES** Plaintiff's motion for partial summary judgment and **GRANTS** Defendants' motion for summary judgment.

///

1

## I.    BACKGROUND

Plaintiff owns two villas, Units #6550 and #6509, located in the Omni La Costa Resort and Spa ("Resort"). (Third Amended Complaint ("TAC"), Doc. No. 41, ¶ 11.) Defendants own and operate the Resort according to the Unit Maintenance and Operations Agreement ("UMA"). (*Id.* ¶¶ 23, 24.) All villas are governed by the UMA, which entitles Defendants to the greater of $100 per night or 20% of a villa owner's nightly rental revenue if the owner chooses not to use LC Brokerage as its managing agent under a separate Rental Management Agreement ("RMA"). (*Id.* ¶ 9.) In exchange, the Resort is required to perform the following services: "(i) making and accepting reservations, (ii) enforcing standard check-in and check-out procedures . . . [and] (iii) issu[ing] room keys . . . (collectively, the "Services")." (*Id.* ¶ 24.) The Resort operates as a "Condotel"—essentially a condominium unit and hotel hybrid. (*Id.* ¶ 4.) A condotel sells individual units, or villas, which can then be rented to third parties, while the unsold units operate as a traditional hotel. (*Id.*) Thus, Plaintiff and Defendants may be considered competitors, as the hotel and rental management compete with private owners, like Plaintiff, to rent units at the Resort. (*Id.* ¶ 8.)

Defendants were sued in a prior action in the San Diego Superior Court involving similar issues by an alleged predecessor-in-interest of Plaintiff. *See LC Inv. 2010, LLC, et al. v. LaCosta Invs., LLC, et al.*, Case No. 37-2016-00003113-CU-BC-NC (the "Prior Action"). (TAC ¶¶ 1–5.) The Prior Action resulted in a final judgment which recognized that Defendants gave preferential treatment to some private owners in terms of access to Resort amenities and fee charging. (*Id.*; *see also* Doc. No. 47-5 at 41–43.) This preferential treatment negatively impacted the value of disparately treated units—specifically, Unit #6509. (TAC ¶ 12.) At the time of the Prior Action, Unit #6509 was owned by LaCosta Investments, LLC ("LaCosta"), and Unit #6550, which was not at issue in the Prior Action, was owned by Mario and Rachel Paniccia. (Doc. No. 47-1 at 12; *see also* Doc. No. 47-5 at 116–19.) Approximately seven months after the entry of the Amended Judgment in the Prior Action, on or around May 1, 2019, another alleged predecessor-in-interest of

2

Plaintiff, 900PCH110, LLC, acquired Unit #6550 from the Paniccias. (Doc. No. 47-1 at 12.) At the time 900PCH110, LLC, acquired Unit #6550, by and through Joshua Erskine, it elected not to participate in the RMA but executed the UMA for that unit. (*Id.*) Plaintiff Teton was thereafter formed on or around December 9, 2019. (*Id.* at 13; *see also* Doc. No. 47-5 at 44.) Plaintiff asserts it holds title to Unit #6509 as Teton Global Investments LLC – LaCosta Investments – Series 2, as a series limited liability company. (TAC ¶ 11.) On May 16, 2020, 900PCH110, LLC then deeded Unit #6550 to Plaintiff Teton. (Doc. No. 47-1 at 13.)

It is undisputed that Plaintiff is not a party to the RMA. (TAC ¶ 63.) Rather, Plaintiff chooses to rent its own units to guests directly. (*Id.* ¶ 4.) Those parties under the RMA are not charged an additional cleaning fee for their units and are not required to pay daily housekeeping. (*Id.* ¶ 24.) Additionally, the guests of parties under the RMA are given full access to all amenities, such as the Splash Land Pool, Kidtopia, and the Edge Adult Terrace Pool. (*Id.* ¶ 39.) Because Plaintiff is not a party to the RMA, Plaintiff's guests do not have access to these amenities. (*Id.*) However, both the UMA and RMA are silent as to whether rental guests are granted access to the Resort's amenities. (*Id.*) Upon check-in, Plaintiff's guests staying in Unit #6550 are specifically told by the Resort that they do not have such access. (*Id.*)

In this action, Plaintiff, as the successor-in-interest, seeks to enforce the holding in the Prior Action as to all units that it owns and for each guest, regardless of which unit they are renting. (TAC ¶ 6.) Plaintiff filed the Complaint on July 15, 2020, in the Superior Court of California, County of San Diego, as Case No. 37-2020-00024566-CU-BC-CTL. (Doc No. 1-2.) On July 30, 2020, Plaintiff filed a first amended complaint as a matter of course. (Doc. No. 1 at 2.) On September 8, 2020, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1332(d), 1441(a), and 1446. (*Id.*) Thereafter, Plaintiff filed a second amended complaint on December 16, 2020, which was dismissed with leave to amend on August 11, 2021. (Doc. Nos. 16 & 39.) Plaintiff then filed the TAC on August 27, 2021. (Doc. No. 41.) Defendants then filed a partial motion to strike and partial motion

3

to dismiss the fourth cause of action (Doc. No. 44), which was denied in part and granted in part (Doc. No. 61). Plaintiff claims Defendants continue to unfairly interfere with Plaintiff's ability to maximize their unit value and treat owners differently depending on the owner's relationship with Resort management.

## II.   LEGAL STANDARD

A court may grant summary judgment when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party seeking summary judgment bears the initial burden of informing a court of the basis for its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See Long v. Cty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Id.* If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v.*

4

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party cannot "rest upon the mere allegations or denials of [its] pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *See Estate of Tucker*, 515 F.3d 1019, 1030 (9th Cir. 2008) (internal quotation marks and citation omitted).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before a court must be drawn in favor of the opposing party. *See Stegall v. Citadel Broad, Inc.*, 350 F.3d 1061, 1065 (9th Cir. 2003). However, "[b]ald assertions that genuine issues of material fact exist are insufficient." *See Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007); *see also Day v. Sears Holdings Corp.*, No. 11–09068, 2013 WL 1010547, at *4 (C.D. Cal. Mar. 13, 2013) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."). Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" *See Anderson*, 477 U.S. at 249–50; *see also Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006) (same). If the nonmoving party fails to produce evidence sufficient to create a genuine dispute of material fact, the moving party is entitled to summary judgment. *See Nissan Fire & Marine*, 210 F.3d at 1103.

## III.   REQUESTS FOR JUDICIAL NOTICE

Under Federal Rule of Evidence 201, the court "may judicially notice a fact that is not subject to reasonable dispute" for the following two reasons: (1) "it is generally known within the trial court's territorial jurisdiction," or (2) it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts may also "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (internal quotations and citations omitted). Further, a court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). As part of its motion, Plaintiff

5

filed a Request for Judicial Notice of the records on file with the Superior Court of California, County of San Diego, North County Division. (Doc. No. 46-5.) Defendants have also requested judicial notice in its motion for summary judgment. (Doc. No. 47-1 at 10, n. 4.) The Court addresses each of the parties' requests in turn.

Both Plaintiff and Defendants request the Court to take judicial notice of (1) the Judgment After Court Trial dated July 17, 2018, issued by Judge Earl H. Maas, III; (2) a copy of the Reporter's Transcript from the September 28, 2018 hearing before Judge Maas ("September 28 Hearing"); and (3) the Amended Judgment After Court Trial dated October 10, 2018, issued by Judge Maas ("Amended Judgment"). (Doc. No. 46-4 at 2; Doc. No. 47-1 at 10, n. 4.) Because these documents demonstrate the existence of other court proceedings and are matters of public record, the Court **GRANTS** Plaintiff's request for judicial notice. *See* Fed. R. Evid. 201.

Next, Defendants further request the Court to take judicial notice of this Court's prior ruling in *Beaver, et al. v. Omni Hotels Management Corporation, et al.*, 20-cv-00191-AJB-KSC, 2021 WL 1174719 (S.D. Cal. Mar. 29, 2021). (Doc. No. 51 at 13, n. 10.) Plaintiff does not oppose this request for judicial notice. (*See generally* Doc. No. 55.) Because the Court "may take judicial notice of its own records in other cases[,]" the Court **GRANTS** Defendants' request for judicial notice. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

## IV.   DISCUSSION

Plaintiff moves for summary judgment on its first claim for relief for declaratory judgment under the doctrine of issue preclusion. (Doc. No. 46.) Defendants move for summary judgment on each of Plaintiff's four claims for (1) declaratory judgment, (2) breach of contract, (3) intentional interference with prospective economic advantage and business relationships, and (4) unfair competition. (Doc. No. 47-1.) The Court will address each basis for summary judgment below.

### A.   Evidentiary Objections

As a preliminary matter, Plaintiff objects to evidence submitted in support of

6

Defendants' opposition to Plaintiff's motion for summary judgment. (Doc. No. 52-4.) Specifically, Plaintiff objects to: (1) Exhibit 6: Reporter's Transcript of Hearing held on September 28, 2018 on LC Investments and LC Brokerage's objections to the original Judgment[1]; (2) Exhibit 7: Grant Deed – Paniccias (Grantors) to 900PCH110, LLC (Grantee); (3) Exhibit 9: Email production between Omni and Plaintiff; (4) Exhibit 10: Teton Global Investments LLC's Articles of Organization filed December 9, 2019; (5) Exhibit 14: Housekeeping Agreement between LC Brokerage Corp dba La Costa Villas Leasing and 900PCH110, LLC; and (6) Exhibit 21: Third-Party Website Listings for Villa #6550 at Omni La Costa Resort and Spa. (*Id.*) Plaintiff's relevance objections are unnecessary as the Court cannot rely on irrelevant facts in its summary judgment analysis. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Thus, the Court **OVERRULES** Plaintiff's objection to Exhibits 7, 10, and 14. The Court does not rely on the remaining above-referenced exhibits in ruling on the instant motion. Accordingly, the Court **DENIES AS MOOT** Plaintiff's remaining evidentiary objections.

## B.   Declaratory Judgment

Plaintiff's first claim raises issue preclusion as to this action based on the Judgment in the Prior Action in the Superior Court of California, County of San Diego. (TAC ¶¶ 28–34.) Plaintiff and Defendants both move for summary judgment on this claim. (Doc. No. 46; Doc. No. 47 at 18.) Specifically, Plaintiff requests that preclusive effect be given to the state court judgment in *LC Investments 2010, LLC, et al. v. LaCosta Investments, LLC, et al.*, and "contends it is entitled to have all of its rental guests treated equally regardless of which unit they are renting in a manner consistent with the Judgment." (Doc. No. 46-1 at 11.) Defendants counter that this action fails as a matter of law because (1) the Prior Action did not involve an identical issue, (2) the Judgment lacks clarity as to what

---

[1] The Court notes that Plaintiff, in its motion for partial summary judgment, requested judicial notice of this exact document, which was granted by the Court above. Plaintiff now disingenuously objects to Defendants admitting the September 28 Hearing based upon irrelevance, lack of foundation, immateriality, prejudice, and confusing of issues.

issues were decided and why, and (3) the prior court's express limitation of the Judgment bars issue preclusion. (Doc. No. 51 at 11–14.) Plaintiff replies that each element of issue preclusion has in fact been satisfied. (Doc. No. 55.)

### 1.    The *Rooker-Feldman* Doctrine

First, Plaintiff argues that Defendants' attempt to review or collaterally attack the judgment in the Prior Action is prohibited under the *Rooker-Feldman* doctrine. (Doc. No. 46-1 at 12) (citing *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1102 (9th Cir. 2003)). Defendants respond that the *Rooker-Feldman* doctrine does not apply here because they are not appealing the prior judgment, nor suggesting it does not apply to the unit at issue in the Prior Action, nor collaterally attacking Judge Maas's express statements on the prior judgment. (Doc. No. 56 at 5.) The *Rooker-Feldman* doctrine evolved from two Supreme Court decisions, *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). *See Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). "Under *Rooker-Feldman*, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Id.* Here, Defendants are not appealing the final judgment of the Prior Action, but are merely requesting the Court to review the entire record in the Prior Action to determine whether issue preclusion applies. Thus, the Court finds that the *Rooker-Feldman* doctrine does not apply.

### 2.    Issue Preclusion

California law governs the preclusion analysis for the California judgment. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988). In California, issue preclusion applies: "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 819 (2015). "In considering whether these criteria have been met, courts look carefully at the entire record from the prior proceeding, including the pleadings, the evidence, the jury instructions, and any special jury findings or verdicts." *Hernandez v. City of Pomona*, 46

8

Cal. 4th 501, 511 (2009) (internal citations omitted). Additionally, "'[i]n view of the certainty required in estoppels, the application of the doctrine of res judicata cannot be made by inference or surmise as to the effect of the judgment. If, on the face of the record, anything is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when it is pleaded, and nothing conclusive in it when it is offered in evidence.'" *Casad v. Qualls*, 70 Cal. App. 3d 921, 927 (1977) (quoting 29 Cal. Jur. 2d, <u>Judgments</u> § 239, at 200–01). The identical-issue requirement for issue preclusion "addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." *Lucido v. Superior Court*, 51 Cal. 3d 335, 342 (1990) (internal citations omitted).

Plaintiff asserts the issues here and in the Prior Action are identical because both cases address the policy for housekeeping charges and access to resort amenities by Plaintiff's guests. (Doc. No. 46-1 at 12.) Defendants argue that issue preclusion cannot apply because the Prior Action pertained to a unit not at issue here, involved different parties, and that the Prior Action primarily addressed cross-claims for breach of contract under the RMA, to which Plaintiff admits it was not a party, without interpretation of the UMA. (Doc. No. 47-1 at 18–20.)

In the Amended Judgment, the Superior Court of California, County of San Diego, addressed both Plaintiff's predecessor-in-interest and Defendants' obligations under the RMA and UMA. (Doc. No. 47-5 at 95.) However, in reviewing both the Amended Judgment and the Final Statement of Decision (Doc. No. 47-5 at 383–86), there is insufficient clarity and certainty as to the basis of the prior judgment. From neither document can it be read that the UMA conferred rights of access to resort amenities or the policy for housekeeping charges to Plaintiff. Rather, the Court at the September 28 Hearing, with appearances by counsel for both Plaintiff's predecessor-in-interest and Defendants, clarifies that Plaintiff's predecessor-in-interest did not gain access to amenities under the UMA:

///

9

MR. FERGUSON: Okay. I guess my concern here would be where else does [Mr. Erskine's] entitlement to access to these amenities come from, if not under the UMA?

THE COURT: It comes from me.

MR. FERGUSON: Okay. Fair Enough.

(Doc. No. 46-4 at 40.)

At the September 28 Hearing, the Court in the Prior Action further stated that the access to amenities was not an interpretation of the UMA, and specified that the judgment was limited to the instant case and should not apply to other parties or villa owners at the Resort:

THE COURT: . . . So I -- it is my intent to make findings as they apply to these two units [Units #6509 and #6532] because I think there's already been -- there was some adaptation to Mister --

MR. HOLDEN: Palmer.

THE COURT: -- Palmer, which made sense from a business standpoint, especially when you have somebody who can essentially litigate for free. But the -- since I had to make a prospective order going forward, that was my -- that was my guide. *But it should not be read as this is somehow applicable to everybody else.* Certainly they may decide with another unit owner, Okay, we have this deal over here, we'll move forward. That's fine. But I -- I made unique orders to these parties in what was a very unique trial and finding by the Court. Since I was doing an in equity, I was trying to come up with a path to stop litigation and allow the parties to go forward, recognizing, quite honestly, economically, if they want to litigate the next ten years, they can. . . . *I do not view these as a specific interpretation of the UMA.* I find them as the specific orders from the Court going forward to allow these parties to live in -- or to exist in harmony going forward.

(*Id.* at 41–42) (emphasis added).  Thus, based upon the Court's own explanation in the Prior Action, it is persuasive that issue preclusion should not apply here. Indeed, "in most circumstances, a ruling by the first court that its judgment should not establish nonmutual

///

10

preclusion should be honored by later courts without further inquiry." Wright & Miller, *Federal Practice and Procedure* § 4465 (3d ed. 2021).

Accordingly, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiff's partial motion for summary judgment as to the first claim for relief under issue preclusion.

### C. Breach of Contract

Next, Plaintiff asserts in its TAC that Defendants have breached the UMA by failing "to provide standard check-in and check-out procedures for the units, or third party service provides [sic], and to otherwise timely and consistently provide all required Services." (TAC ¶ 41.) Plaintiff contends Defendants further breached the UMA by excluding Plaintiff's guests from accessing the Resort's amenities. (*Id.*) In support of its argument, Plaintiff compares the UMA to the RMA, which are both silent as to whether rental guests are granted access to the Resort's amenities. (*Id.* ¶ 39.) Despite this, Plaintiff contends, Defendants have taken the "arbitrary position that rental guests under the UMA are only entitled to use amenities around the villa buildings, and not the Splash Land Pool, Kidtopia or the Edge Adult Terrace Pool." (*Id.*)

#### 1. Access by Third-Party Providers

In their motion for summary judgment, Defendants state that Plaintiff's allegations regarding breaches related to third-party cleaning services are prospective, immaterial, and addressed by the UMA. (Doc. No. 47-1 at 24.) Defendants argue that Plaintiff has not attempted to secure third-party service providers for housekeeping or maintenance, and thus none have attempted to access or have been denied access to Unit #6550. (*Id.*) Thus, continue Defendants, Plaintiff's breach of contract claim on this basis is prospective and impermissibly requires an advisory opinion. (*Id.*) In support, Defendants point to the UMA, which states:

> Owners shall not permit any person or persons to enter the Unit without prior written notification and coordination with Resort.
>
> . . .

11

> The Resort will perform the following services for the Unit: . . . (ii) enforcing standard check-in and check-out procedures and insuring occupancy in the Unit is by Owners and Permitted Users only.

(Doc. No. 47-5 at 121–22.)  Defendants assert that Plaintiff would merely be required to have the third-party vendors check in at the front desk, and Jennifer Toczko, Joshua Erskine's assistant, has admitted as such. (Doc. No. 47-1 at 25; *see also* Deposition of Jennifer Toczko ("Toczko Depo."), Doc. No. 47-5 at 240:14–24.)

In its reply, Plaintiff does not address entry by third-party service providers for housekeeping or maintenance under the UMA. (*See generally* Doc. No. 52.)

The Court finds that regarding access by third-party providers for services including housekeeping and maintenance, Plaintiff has failed to produce evidence sufficient to create a genuine dispute of material fact. Plaintiff has not asserted that housekeepers or maintenance persons have not been permitted to enter the Unit, resulting in a breach of the UMA. Further, although Plaintiff claims Defendants have failed to "provide all required Services," Plaintiff fails to assert which Services have not been provided.

## 2. Access to the Resort's Amenities

Defendants next contend that the UMA does not contain any obligations or express provisions regarding access to the Resort's amenities. (Doc. No. 47-1 at 22–23.) As such, Defendants assert, Plaintiff cannot establish a breach of contract claim through "non-existent contractual duties." (*Id.* at 23.)

In response, Plaintiff asserts that Defendants' position regarding access to amenities violates the covenant of good faith and fair dealing. (Doc. No. 52 at 20.) To this, Plaintiff alleges the "check-in and check-out procedures" should be read to include "the same physical access [to the Resort's amenities] as every other guest." (*Id.* at 22.) Plaintiff further contends that Defendants give Plaintiff's guests a license to entry of the amenities upon handing over the keycards, "like a [sic] admissions ticket[.]" (*Id.* at 18.)

To state a claim for breach of contract under California law, "a plaintiff must plead the contract, plaintiffs' performance (or excuse for nonperformance), defendant's breach,

and damage to plaintiff therefrom." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012) (citation and internal quotation marks omitted). "It is a primary rule of interpretation that contracts must be construed from their four corners, and the intention of the parties must be collected from the entire instrument and not detached portions thereof, it being necessary to consider all of the parts to determine the meaning of any particular part as well as of the whole." *Indenco, Inc. v. Evans*, 201 Cal. App. 2d 369, 374 (1962). The contract "must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." *Id.* (citing Cal. Civ. Code § 1636). Additionally, the covenant of good faith and fair dealing exists "to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000). This covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* at 349–50.

Based upon the language within the four corners of the UMA, it cannot be read that the UMA imparts to Plaintiff's guests access to the Resort's amenities. Rather, the UMA is silent as to this service. Moreover, Plaintiff has failed to assert or provide evidence that the parties had the mutual intention of conferring this benefit at the time of contracting. Generally, "check-in and check-out procedures" is read to mean the procedures regarding the time at which a guest arrives and leaves the Resort, unless terms exist indicating otherwise.

Plaintiff's argument that the issuance of a keycard creates a license to access the amenities is likewise unpersuasive. First, Plaintiff states that although "implied contracts should not be read to vary express terms[,]" this should not be the case here. (Doc. No. 52 at 20.) Plaintiff asserts that it is implied that Defendants give an express license to each guest of the Resort. (*Id.*) However, as noted above, the written terms of the UMA do not confer such an express license. Alternatively, "[a]n implied license is one which is presumed to have been given from the words, acts, or passive acquiescence of the party

authorized to give it." *Zellers v. State*, 134 Cal. App. 2d 270, 273 (1955). Plaintiff likewise has not shown that Defendants authorized Plaintiff's guests a license to access the Resort's amenities through their words, acts, or passive acquiescence. In fact, Defendants have specifically informed Plaintiff's guests upon check-in that they are not authorized to access the amenities and have further directed Plaintiff to disclaim as such in their advertising of Unit #6550. (*See* TAC ¶ 39; Doc. No. 52 at 11.)

Lastly, Defendants assert that Plaintiff's breach of contract action must be dismissed via summary judgment as to Omni, which was not a party to the UMA. (Doc. No. 47-1 at 25.) Plaintiff counters that Omni should not be dismissed. (Doc. No. 52 at 22.) However, because Plaintiff has not met its burden of asserting a genuine dispute as to a material fact on this claim, the Court need not address this issue.

Accordingly, the Court **GRANTS** summary judgment in favor of Defendants as to the second claim for relief in the TAC based upon Plaintiff's assertion of breach of contract under the UMA.

### D.   Intentional Interference with Prospective Economic Advantage and Business Relationships

Plaintiff asserts in its third claim for intentional interference with prospective economic advantage and business relationships ("IIPEA") that it had an economic relationship with potential guests that contained the probability of future economic benefit to it, and that Defendants interfered with Plaintiff's prospective business relationships "by treating rental guests differently depending upon which unit they are renting and assessing fees inconsistently." (TAC ¶ 51.) Plaintiff further contends Defendants "intended their conduct to interfere . . . by impeding marketing of the villas" and that Plaintiff has been damaged by the interference. (*Id.* ¶¶ 52, 53.)

To state a claim for IIPEA, a plaintiff must show (1) an economic relationship between the plaintiff and third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship;

14

(4) actual disruption of the relationship; and (5) damages to plaintiff proximately caused by the defendant's acts. *Blank v. Kirwan*, 39 Cal. 3d 311, 330 (1985). To satisfy the third element, a "plaintiff must plead and prove the defendant's acts are wrongful apart from the interference itself." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1154 (2003). The California Supreme Court has defined this to mean an act that is "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1159 (internal citations omitted).

In Defendants' motion, they assert that Plaintiff has failed to raise an independently wrongful conduct on which Plaintiff can rely. (Doc. No. 47-1 at 26–27.) Defendants state they "only requested that Plaintiff modify a VRBO listing that blatantly suggested an underhanded way for guests of Unit 6550 to gain access to Resort amenities without Defendant's [sic] knowledge." (*Id.* at 27.) Defendants further allege that Plaintiff has agreed to the provision of daily maid services (*see* Doc. No. 47-5 at 175), and that regardless, these services cannot disrupt Plaintiff's relationships with third persons because Plaintiff, not the rental guest, is charged for cleaning. (*Id.*)

In reply, Plaintiff alleges that the independent wrong is the furtherance of unfair competition arising from the use of confidential material. (Doc. No. 52 at 24.) Plaintiff argues that "the use of confidential information to compete should be extended here to apply to a situation where one party has near total control of the operational capabilities of the other." (*Id.*) However, Plaintiff fails to support this novel contention with either case law or evidence of what this confidential information may be. Additionally, the Court need not reach the merits of Plaintiff's argument that Defendants are engaged in racketeering and have engaged in misleading advertising and unfair or fraudulent business practices, which it raises for the first time in its reply brief. (*Id.* at 25–26.)

Accordingly, the Court **GRANTS** summary judgment in favor of Defendants as to the third claim for relief in the TAC.

///

///

Lastly, because the Court previously dismissed Plaintiff's fourth cause of action for unfair competition without leave to amend (Doc. No. 61), the Court **DENIES AS MOOT** Defendants' motion for summary judgment as to Plaintiff's fourth claim.

## V.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiff's motion for partial summary judgment. All issues now resolved the Clerk is ordered to enter judgment for the Defendants and against plaintiff and close the case.

**IT IS SO ORDERED.**

Dated:  October 26, 2021

Hon. Anthony J. Battaglia
United States District Judge

16